IN THE CIRCUIT COURT OF THE FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA
CIVIL DIVISION

RECEIVED BY
APR 17 2008
Bell, Roper & Kohlmyer

ANTONIO J. ORTIZ-CARBALLO,

    Plaintiff,

v.

CASE NO.: 08-1109-CA-B

DAVID R. ELLSPERMAN,
CLERK OF COURT, FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA,

    Defendant.

---

## COMPLAINT

Plaintiff ANTONIO J. ORTIZ-CARBALLO ("ORTIZ") hereby sues DAVID R. ELLSPERMAN, CLERK OF COURT, FIFTH JUDICIAL CIRCUIT IN AND FOR MARION COUNTY, FLORIDA ("CLERK"), and in support thereof, alleges as follows:

### Nature of the Case

1. This is an action to remedy unlawful employment practices and civil rights violations brought pursuant to the Florida Civil Rights Act of 1992, Ch. 760, Florida Statutes (2007) ("FCRA"), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq*, ("Title VII"), and 42 U.S.C. §1981 ("§1981") through 29 U.S.C. §1983 ("§1983"). ORTIZ seeks equitable relief and damages including: declaratory and injunctive relief; back pay and reinstatement or front pay in lieu of reinstatement; compensatory damages; attorneys' fees, costs, and expenses; and all other relief this Court deems just and proper.



## Jurisdiction, Parties and Venue

2. This is an action for injunctive relief and damages in excess of $15,000.00.

3. The CLERK is a public officer and an employer within the meaning of the FCRA and Title VII.

4. ORTIZ is a citizen of the United States, and a resident of Marion County, Florida.

5. At all material times, ORTIZ was an employee and is an aggrieved person within the meaning of the FCRA and Title VII.

6. The acts complained of herein occurred in Marion County, Florida.

7. ORTIZ has met all conditions precedent and has exhausted all administrative remedies prior to the institution of this action including:

   a. ORTIZ filed a timely charge of discrimination with the United States Equal Employment Opportunity Commission and the Florida Commission on Human Relations;

   b. ORTIZ received a Notice of Right to Sue from the United States Equal Employment Opportunity Commission within 90 days of filing this action; and

   c. ORTIZ waited more than 180 days without any cause determination from the Florida Commission on Human Relations prior to filing this action.

## Facts

8. After engaging ORTIZ as a temporary employee, the CLERK created a position in order to hire ORTIZ as a permanent employee effective on or about November 18, 2005.

9. ORTIZ started as a permanent employee in the position of Clerk I and worked in the domestic violence section of the CLERK's office.

10. ORTIZ consistently received excellent job evaluations throughout his employment with the CLERK, received raises, was promoted to Clerk II, was consistently rated outstanding in

the areas of Customer Service, Conduct & Attitude and was commended for his professionalism and positive attitude. For instance:

 a. After approximately three months of employment, on or about February 20, 2006, the CLERK completed an Employee Performance Evaluation of ORTIZ in which the CLERK rated ORTIZ as either meeting or exceeding expectations in every category. In particular, the CLERK rated ORTIZ as "exceeds expectations" on both "Customer Service" and "Conduct and Attitude" factors, meaning ORTIZ displayed and maintained tact and courtesy; cooperated and was helpful with his co-workers; had a positive attitude; and was willing to accept correction. In fact, in the CLERK's handwritten notations on that evaluation, the CLERK commented that ORTIZ displayed professionalism in performing his job duties.

 b. After approximately six months of employment, on or about June 6, 2006, the CLERK again evaluated ORTIZ. The Employee Performance Evaluation completed again rated ORTIZ as either meeting or exceeding expectations in every category. And, again, the CLERK rated ORTIZ as "exceeds expectations" on all factors under both "Customer Service" and "Conduct and Attitude". In addition, the CLERK commented again on ORTIZ's professionalism as well as his positive attitude. Moreover, the CLERK promoted ORTIZ retroactively to the position and salary of Clerk II.

 c. After approximately one year of employment, on or about December 5, 2006, the CLERK again completed an Employee Performance Evaluation. He rated ORTIZ as exceeding expectations in every category with the sole exception of job knowledge. And, once again, the CLERK commented on ORTIZ's professionalism as well as his positive attitude. As a result, on or about December 15, 2006, the CLERK rewarded ORTIZ with a

merit increase.

11. In the beginning of 2007, ORTIZ complained to his immediate supervisor, Denise Kingsley, Coordinator, on several occasions about two new co-workers who had been recently hired to work on the domestic violence team.

12. ORTIZ reported that the two new employees were disrespectful towards both ORTIZ and Emilia Torres, a Senior Clerk and a co-worker of ORTIZ in the domestic violence section, and that they displayed a very poor attitude toward their work in general.

13. The two new employees were both Caucasian females and were younger than ORTIZ and Mrs. Torres.

14. ORTIZ and Mrs. Torres are both Hispanic and, specifically, are Puerto Rican.

15. ORTIZ's verbal complaints to his immediate supervisor, Ms. Kingsley, went unanswered, so he complained to Ms. Kingsley's direct supervisor, Ozietta Landers.

16. ORTIZ's verbal complaints to Ms. Landers also went unanswered. Thus, ORTIZ put his complaint to Ms. Landers in writing on March 5, 2007, and asked for a transfer to a different section.

17. The disrespect and hostility of the two new co-workers was still not addressed or remedied, nor did the CLERK transfer ORTIZ as he requested.

18. Instead, Ms. Kingsley and her superiors began to treat ORTIZ differently.

19. For instance, a year prior to ORTIZ's complaints, he explained to Ms. Kingsley that he could not sit next to a telephone with a loud ringer because he has a medical condition and is startled by loud noises. As a result, he was permitted to either keep the ringer tone low on his phone, or not sit by a phone. However, just three weeks after his written complaint about the two new co-workers, Ms. Kingsley suddenly demanded that all employees, including him, keep their ring tones

on high.

20. ORTIZ reminded Ms. Kingsley of his condition and inability to sit next to a loud ringer, but she insisted that he do so anyway, and disciplined him as a result on or about April 13, 2007.

21. In response, ORTIZ indicated he would raise the issue to the CLERK directly if she continued to insist that he sit next to a loud ringer.

22. ORTIZ put his complaint in writing to the CLERK the following day because Ms. Kingsley continued to insist that he sit next to a loud ringer despite knowing about his medical condition.

23. ORTIZ explained the situation to the CLERK, including the complaint he made about the co-workers treating Mrs. Torres and him with disrespect and hostility, and told the CLERK the only reason he knew that Ms. Kingsley was refusing to allow him not to have a loud ringer next to him at that point was in retaliation for his March 5, 2007 written complaint to Ms. Landers.

24. ORTIZ further explained that the situation with the co-workers had still not been resolved and, in fact, was worse. He explained that the situation was adversely affecting his ability to do his work.

25. ORTIZ also explained that Ms. Kingsley was treating him differently and had been ever since he lodged the written complaint about the co-workers.

26. Rather than taking appropriate remedial action to remedy the discriminatory and retaliatory conduct ORTIZ complained of, the CLERK's two head supervisors, Administrator Jack Seuss and Administrator Jaymi Kudary, responded by reprimanding ORTIZ for refusing to sit next to a phone with a loud ringer.

27. On or about June 5, 2007, ORTIZ was still experiencing the same problems at work,

thus, he spoke with Ms. Kudary about the issues again.

28. Still, no action was taken to remedy the discriminatory conduct.

29. Instead, on or about June 11, 2007, the CLERK summoned ORTIZ into a meeting with him, Ms. Kudary, Ms. Kingsley and Ms. Landers.

30. During the June 11, 2007 meeting, the CLERK reprimanded ORTIZ for speaking Spanish with Mrs. Torres.

31. ORTIZ attempted to explain that he and Mrs. Torres only spoke Spanish to one another when no one else was around, and would switch to English when someone else approached them. He also explained that he had been requested by his supervisors to translate Spanish for the office on several occasions.

32. Nonetheless, the CLERK instructed him not to speak Spanish in the office at all.

33. In addition, during the same meeting, the CLERK asked for ORTIZ's resignation.

34. The CLERK's stated reason for asking ORTIZ to resign was due to "differences with his supervisor."

35. ORTIZ responded that he did not have any difference with the supervisor and that he did not wish to resign.

36. All of the forgoing actions interfered with ORTIZ's ability to work, created a hostile and intolerable working environment, and was calculated to force him to resign.

37. Based upon information and belief, the CLERK also instructed other employees not to speak Spanish at work.

38. Upon information and belief, out of approximately 200 employees, only five of the employees in the CLERK's office are Hispanic.

39. In addition, Ms. Kingsley commented directly in relation to ORTIZ that she would

never hire another Spanish employee again.

40. On or about June 13, 2007, two days after the meeting in which the CLERK asked for ORTIZ's resignation, the CLERK drafted a memorandum terminating ORTIZ for supposedly "disrespectful and disruptive" behavior.

41. Not only was this stated reason for terminating ORTIZ different than the reason the CLERK stated for wanting ORTIZ to resign, it is also in stark contrast to all of the performance ratings the CLERK gave ORTIZ as well as the CLERK's glowing comments about ORTIZ's professionalism and positive attitude.

42. ORTIZ was terminated and replaced with a non-Puerto Rican, non-Hispanic individual.

43. As a result of the above, ORTIZ has suffered lost wages and benefits, emotional distress, loss of enjoyment of life, mental anguish, damage to his professional reputation and ability to obtain gainful employment, and he has had to retain the undersigned law firm to which he is obligated to pay reasonable attorneys' fees, costs and expenses.

## COUNT I
### Hostile Environment National Origin Discrimination in Violation of the FCRA

44. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

45. The forgoing harassment and other actions were taken because of ORTIZ's national origin and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of the FCRA.

46. The CLERK subjected ORTIZ to a hostile environment based upon his national origin in violation of the FCRA.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A. Declaring the CLERK's actions to be an unlawful employment practice in violation of the FCRA;

B. Permanently enjoining the CLERK from future violations of the FCRA;

C. Awarding ORTIZ his lost wages and benefits including interest thereon;

D. Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E. Awarding ORTIZ compensatory damages;

F. Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

## COUNT II
### Hostile Environment National Origin Discrimination in Violation of Title VII

47.     ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

48.     The forgoing harassment and other actions were taken because of ORTIZ's national origin and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of Title VII.

49.     The CLERK subjected ORTIZ to a hostile environment based upon his national origin in violation of Title VII.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A.     Declaring the CLERK's actions to be an unlawful employment practice in violation of Title VII;

B.     Permanently enjoining the CLERK from future violations of Title VII;

C.     Awarding ORTIZ his lost wages and benefits including interest thereon;

D.     Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E.     Awarding ORTIZ compensatory damages;

F.     Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.     Awarding such other relief as the Court deems just and appropriate.

## COUNT III
### Disparate Treatment National Origin Discrimination in Violation of the FCRA

50. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

51. The forgoing adverse actions, including the unwarranted discipline and termination of ORTIZ's employment were taken because of ORTIZ's national origin and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of the FCRA.

52. The CLERK subjected ORTIZ to disparate treatment based upon his national origin in violation of the FCRA.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A. Declaring the CLERK's actions to be an unlawful employment practice in violation of the FCRA;

B. Permanently enjoining the CLERK from future violations of the FCRA;

C. Awarding ORTIZ his lost wages and benefits including interest thereon;

D. Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E. Awarding ORTIZ compensatory damages;

F. Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

## COUNT IV
### Disparate Treatment National Origin Discrimination in Violation of Title VII

53. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

54. The forgoing adverse actions, including the unwarranted discipline and termination of ORTIZ's employment were taken because of ORTIZ's national origin and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of Title VII.

55. The CLERK subjected ORTIZ to disparate treatment based upon his national origin in violation of Title VII.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A. Declaring the CLERK's actions to be an unlawful employment practice in violation of Title VII;

B. Permanently enjoining the CLERK from future violations of Title VII;

C. Awarding ORTIZ his lost wages and benefits including interest thereon;

D. Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E. Awarding ORTIZ compensatory damages;

F. Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

## COUNT V
### Hostile Environment Race Discrimination in Violation of §1981 brought via §1983

56. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

57. At all material times, the CLERK was acting under color of state law within the meaning of §1983.

58. The forgoing harassment and other actions were taken because of ORTIZ's race and/or alienage and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of §1981.

59. The CLERK subjected ORTIZ to a hostile environment based upon his race and/or alienage in violation of §1981.

60. The CLERK'S conduct deprived ORTIZ of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be discriminated against based upon being of Hispanic descent as guaranteed by §1981.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A. Declaring the CLERK's actions to be an unlawful employment practice in violation of §1981;

B. Permanently enjoining the CLERK from future violations of §1981;

C. Awarding ORTIZ his lost wages and benefits including interest thereon;

D. Reinstating ORTIZ, or in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E.  Awarding ORTIZ compensatory damages;

F.  Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.  Awarding such other relief as the Court deems just and appropriate.

## COUNT VI
### Disparate Treatment Race Discrimination in Violation of §1981 brought via §1983

61.  ORTIZ restates and incorporates herein the allegations in paragraph numbers 1 through 43 above.

62.  At all material times, the CLERK was acting under color of state law within the meaning of §1983.

63.  The forgoing adverse actions, including the unwarranted discipline and termination of ORTIZ's employment were taken because of ORTIZ's race and/or alienage and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of §1981.

64.  The CLERK subjected ORTIZ to disparate treatment based upon his race and/or alienage in violation of §1981.

65.  The CLERK'S conduct deprived ORTIZ of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be discriminated against based upon being of Hispanic descent as guaranteed by §1981.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A.  Declaring the CLERK's actions to be an unlawful employment practice in violation of §1981;

B.  Permanently enjoining the CLERK from future violations of §1981;

C.  Awarding ORTIZ his lost wages and benefits including interest thereon;

D.  Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E.  Awarding ORTIZ compensatory damages;

F.  Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G.  Awarding such other relief as the Court deems just and appropriate.

## COUNT VII
### Disparate Impact Race Discrimination in Violation of §1981 brought via §1983

66. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

67. At all material times, the CLERK was acting under color of state law within the meaning of §1983.

68. The forgoing adverse actions, including the institution of an policy of not permitting Spanish to be spoken, has a disparate impact upon race and/or alienage and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of §1981.

69. The CLERK subjected ORTIZ to disparate impact discrimination based upon his race and/or alienage in violation of §1981.

70. The CLERK'S conduct deprived ORTIZ of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right not to be discriminated against based upon being of Hispanic descent as guaranteed by §1981.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

A. Declaring the CLERK's actions to be an unlawful employment practice in violation of §1981;

B. Permanently enjoining the CLERK from future violations of §1981;

C. Awarding ORTIZ his lost wages and benefits including interest thereon;

D. Reinstating ORTIZ, or in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

E. Awarding ORTIZ compensatory damages;

F. Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

G. Awarding such other relief as the Court deems just and appropriate.

## COUNT VII
### Retaliation in Violation of §1981 brought via §1983

71. ORTIZ restates and incorporates herein the allegations in paragraphs numbered 1 through 43 above.

72. At all material times, the CLERK was acting under color of state law within the meaning of §1983.

73. The forgoing adverse actions, including the unwarranted discipline, imposition of the policy of not permitting employees to speak Spanish, and termination of ORTIZ's employment were taken because of ORTIZ's opposition and objections to and complaints about race discrimination and negatively affected the terms, conditions and privileges of ORTIZ's employment in violation of §1981.

74. The CLERK subjected ORTIZ to retaliation based upon his opposition and objections to and complaints about race discrimination in violation of §1981.

75. The CLERK'S conduct deprived ORTIZ of the rights, privileges or immunities guaranteed him under the Constitution or laws of the United States within the meaning of §1983, including his right to oppose discrimination based upon his Hispanic descent as guaranteed by §1981.

WHEREFORE, ORTIZ requests that this Honorable Court enter judgment in his favor and against the CLERK:

   A. Declaring the CLERK's actions to be an unlawful employment practice in violation of §1981;

   B. Permanently enjoining the CLERK from future violations of §1981;

   C. Awarding ORTIZ his lost wages and benefits including interest thereon;

   D. Reinstating ORTIZ or, in the alternative, awarding ORTIZ front pay and benefits in lieu of reinstatement;

   E. Awarding ORTIZ compensatory damages;

   F. Awarding ORTIZ the reasonable attorneys' fees, costs and expenses incurred in this matter; and

   G. Awarding such other relief as the Court deems just and appropriate.

## Demand for Jury Trial

76. ORTIZ demands a trial by jury on all issues so triable.

Respectfully submitted,

*[signature]*

Cynthia N. Sass, Esquire
Florida Bar No. 0691320
Kendra D. Presswood, Esquire
Florida Bar No. 0935001
Law Offices of Cynthia N. Sass, P.A.
601 West Dr. Martin Luther King Jr. Boulevard
Tampa, Florida 33603
Phone: (941) 870-3099
Fax:    (866) 864-3604
E-mail: Firm@sasslawfirm.com