UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTONIO J. ORTIZ-CARBALLO,

          Plaintiff,

v.                                       Case No. 5:08-cv-165-Oc-10GRJ

DAVID R. ELLSPERMANN, IN HIS
INDIVIDUAL AND IN HIS OFFICIAL
CAPACITY AS CLERK OF THE CIRCUIT
COURT, FIFTH JUDICIAL CIRCUIT IN AND
FOR MARION COUNTY, FLORIDA,

          Defendant.
_____/

## ORDER

Pending before the Court is Defendant, David R. Ellspermann, Clerk Of The Circuit Court, Fifth Judicial Circuit In And For Marion County, Florida's, Second Amended Motion To Compel Production Of Documents From Non-Parties (Doc. 20) to which Plaintiff filed a response in opposition (Doc. 21) and Defendant, David Ellspermann, Clerk Of The Circuit Court, Fifth Judicial Circuit In And For Marion County, Florida's Motion To Compel Plaintiff To Respond To Defendant's Third Request To Produce (Doc. 26) to which Plaintiff has not filed a response.

    **A.    Second Amended Motion To Compel
           Production Of Documents From Non-Parties**

Defendant seeks to subpoena medical records from three of Plaintiff's treating physicians – Violet D. Poetter, M.D. ("Dr. Poetter"), Poornam Warman, M.D. ("Dr. Warman") and Nidza Gomez, M.D. ("Dr. Gomez.")  Plaintiff has objected.  As a result Defendant has filed the instant motion requesting the Court to enter an order compelling

the production of medical records from these three doctors, all of whom are non-parties to this action.[1]

Pursuant to Rule 26, Fed. R. Civ. P. parties may obtain discovery regarding any non-privileged matter, if the information sought "is relevant to any party's claim or defense."[2] Relevant information is not limited to that which would be admissible at the trial. Rather, information is relevant if the discovery sought is "reasonably calculated to lead to the discovery of admissible evidence."[3] Rule 45, Fed. R. Civ. P. governs discovery of non-parties by subpoena and the scope of permissible discovery is that set forth in Rule 26. Pursuant to Rule 45(c)(3)(A), "on timely motion," the issuing court must "quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."[4] Accordingly, if the medical records requested by Plaintiff are privileged, this Court must quash or modify the subpoenas served by Plaintiff on the non–party doctors. Where as here, the Court's jurisdiction is premised upon a federal question, the federal law of privilege governs the Court's determination of whether the requested medical records are privileged.[5]

---

[1] The parties agree that the other issues raised in the earlier versions of this motion have been resolved.

[2] Fed. R. Civ. P. 26(b)(1).

[3] Id.

[4] "Paragraph (c)(3) explicitly authorizes the quashing of a subpoena as a means of protecting a witness from misuse of the subpoena power." Fed. R. Civ. P. 45 advisory committee notes, 1991 amendment.

[5] See Hancock v. Hobbs, 967 F.2d 462, 466-47 (11th Cir. 1992.)

**(1) Dr. Poetter**

Dr. Poetter is a psychologist. Federal law recognize a privilege between psychotherapists and their patients.[6] As an initial matter in determining the application of the psychotherapist-patient privilege, the Court must find that the relationship between Dr. Poetter and Plaintiff was a confidential relationship between a patient and a psychotherapist. Because Dr. Poetter is a psychologist who treated or evaluated Plaintiff, the Court concludes that she qualifies as a psychotherapist such that the privilege would cover her confidential communications with Plaintiff. Further, the Court finds that any psychological and medical records created by Dr. Poetter are presumably the result of confidential communications between a patient, Plaintiff, and his psychotherapist. Therefore, the Court finds that Dr. Poetter's records are covered by the psychotherapist-patient privilege, unless it has been waived.[7]

Generally, in order to obtain psychiatric records, the party requesting the records must show that the plaintiff has placed her mental condition "in controversy" and there is "good cause" for production of the records.[8] The majority of federal courts that have addressed the issue have held that a party does not place his mental condition in controversy merely by requesting damages for mental anguish or "garden variety"

---

[6] See Jaffee v. Redmond, 518 U.S. 1, 15 (1996) (holding that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence.").

[7] Defendant incorrectly refers to the "doctor/patient privilege" throughout his Motion. However, Plaintiff acknowledges that there is no doctor-patient privilege and that he only seeks application of the psychotherapist-patient privilege to those records related to counseling he received from Dr. Poetter. See Doc. 21 at page 3, n.2.

[8] See. e.g., Turner v. Imperial Stores, 161 F.R.D. 89 (S.D. Cal. 1995).

emotional distress.[9] In order to place a party's mental condition in controversy the party must allege a specific mental or psychiatric disorder or intend to offer expert testimony to support their claim of emotional distress.[10]

Defendant argues that Plaintiff put his mental state "at issue" because he "is asserting a claim for depression" and because he identified Dr. Poetter as a potential witness in his Rule 26(a) Initial Disclosures. However, in paragraph 43 of his Amended Complaint, Plaintiff merely alleges that he "has suffered lost wages and benefits, emotional distress, loss of enjoyment of life, mental anguish, damage to his professional reputation and ability to obtain gainful employment . . ." [11] Plaintiff does not allege in his Amended Complaint that Defendant's actions caused him to suffer from depression or any other psychological condition. Nor does his Amended Complaint include a claim where emotional distress is an element of the cause of action. Moreover, in his response to the instant motion, Plaintiff clarifies that he has not asserted a claim for depression and that he does not intend to rely upon the testimony of Dr. Poetter to support his claim for damages.[12] Accordingly, Plaintiff has not placed his mental state "at issue."

---

[9] Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 553 (N.D. Ga. 2001) (applying the same analysis regarding medical examinations under Fed. R. Civ. P. 35(a) to the issue of when a patient waives the psychotherapist-patient privilege).

[10] E.g. Turner, 161 F.R.D. at 95 (reviewing several cases and concluding that in addition to a claim of emotional distress, a plaintiff usually must do one or more of the following to put his mental condition "in controversy": (1) a cause of action for intentional or negligent infliction of emotional distress; (2) an allegation of a specific mental or psychiatric injury or disorder; (3) a claim of unusually severe emotional distress; (4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or (5) plaintiff's concession that his or her mental condition is "in controversy" within the meaning of the rule).

[11] Doc. 9, ¶ 43.

[12] See Doc. 21, pages 5-6.

Nevertheless, Defendant argues that Plaintiff waived the privilege because he put "at issue" his hearing condition which causes him to be startled by loud noises. There is no question that Plaintiff's alleged hearing issue is a central issue in this case. Plaintiff, who is Hispanic, *inter alia* alleges that his supervisor retaliated against him for making complaints regarding two Caucasian co-workers.[13] Specifically, Plaintiff alleges that for a year prior to his complaints, Plaintiff's supervisor allowed him to keep his telephone's ringer volume low to accommodate a hearing condition which caused him to be startled by loud noises.[14] However, Plaintiff alleges that after making complaints about his co-workers, Plaintiff's supervisor suddenly demanded that Plaintiff keep his ring tone on high.[15] While Plaintiff alleges that this is evidence of retaliation, Defendant is entitled to challenge the legitimacy of this alleged medical condition and offer other reasons as to why Plaintiff was directed to keep his ring tone on high.[16] Accordingly, medical records related to Plaintiff's hearing condition are relevant to the claims in this case.

However, in determining whether Plaintiff has waived the psychotherapist-patient privilege, the proper inquiry is not whether the medical records are relevant, but rather, whether Plaintiff has put his mental condition "at issue." Plaintiff testified that he sought

---

[13] See Doc. 9 at ¶¶11-18.

[14] See id. at ¶19.

[15] See id. at ¶¶19-22.

[16] Based on Defendant's Answer and Affirmative Defenses to the Amended Complaint, it is difficult to determine what defenses Defendant intends to raise. Indeed, while Defendant raises more than twenty affirmative defenses, they are generic boilerplate defenses without any suggestion as to how these defenses might apply to this action. See Doc. 10.

counseling from Dr. Poetter "because of an incident in the office where I was reprimanded because of the tone of the telephones that I was using."[17] Thus, Plaintiff went to Dr. Poetter to discuss the psychological impact of the reprimand – not, the hearing condition itself. That Plaintiff has put this physical condition "at issue" does not change the Court's conclusion that Plaintiff has not put his mental state "at issue."

Therefore, based on the foregoing, Dr. Poetter's records are subject to the psychotherapist-patient privilege and are protected from disclosure. Accordingly, Defendant's Motion To Compel the records of Dr. Poetter (Doc. 21) is due to be **DENIED.**

**(2)    Dr. Warman**

Dr. Warman is Plaintiff's internal medicine doctor. Under federal law, there is no doctor-patient privilege.[18] Accordingly, because there is no privilege that applies to Dr. Warman's records,[19] the Court need not determine whether Plaintiff has placed his mental and physical condition at issue. Instead, the Court need only determine whether Dr. Warman's records are relevant to the claims in this case.

As discussed above, the medical records related to Plaintiff's alleged hearing condition are relevant to this case. Moreover, Plaintiff has testified that as a result of the actions alleged in the Amended Complaint he suffers from medical conditions, including high blood pressure. As such, Dr. Warman's medical records from the period during which Plaintiff was employed by the Clerk of Court are relevant to this action.

---

[17] Doc. 20, Exhibit C at page 191.

[18] See Taylor v. Dean, 2006 U.S. Dist. LEXIS 77849, *5-6 (M.D. Fla. 2006.)

[19] See Stevenson, 201 F.R.D. 551, 558 (N.D. Ga. 2001).

Accordingly, Defendant's Motion To Compel the records of Dr. Warman (Doc. 21) is due to be **GRANTED** to the extent that any subpoena served upon Dr. Warman shall be limited to records related to the period during which Plaintiff was employed by the Clerk of Court until present.

**(3) Dr. Gomez**

Defendant seeks "[a]ny and all records" Dr. Gomez has in his "possession, custody or control" for Plaintiff. Dr. Gomez was Plaintiff's family physician over 10 years ago, when Plaintiff lived in Puerto Rico.[20] Dr. Gomez prescribed Plaintiff medication for depression following a break up of a long-term relationship. Dr. Gomez did not provide counseling and discontinued the medications after only six months because according to Plaintiff they were no longer "necessary."

As discussed above, because federal law does not recognize a doctor-patient privilege, the requested records are subject to discovery under the Federal Rules of Civil Procedure if the records are "relevant to a claim or defense of any party." Here, Dr. Gomez' records reflect treatment more than 10 years ago for a six-month bout of depression. These records are not relevant or reasonably calculated to lead to the discovery of relevant evidence in this action. Accordingly, Defendant's Motion To Compel the records of Dr. Gomez (Doc. 21) is due to be **DENIED**.

**B. Motion To Compel Plaintiff To Respond To Defendant's Third Request To Produce**

On February 4, 2009, Defendant served Plaintiff with his Third Request to Produce. Defendant represents that Plaintiff has not provided responses to the

---

[20] See Doc. 20, Exhibit C, (Plaintiff's Deposition) at pages 11-13.

discovery. The deadline for doing so has long since passed. Counsel for Defendant represents that despite good faith efforts to resolve this matter with Plaintiff, he has failed to produce the discovery.

Accordingly, Defendant, David R. Ellspermann, Clerk Of the Circuit Court, Fifth Judicial Circuit In And For Marion County, Florida's Motion To Compel Plaintiff To Respond To Defendant's Third Request To Produce (Doc. 26) is **GRANTED**. Plaintiff shall serve responses to Defendant's Third Request to Produce on or before **April 20, 2009.** Failure to comply with this Order could result in the imposition of sanctions, including the award of attorney's fees.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 7, 2009.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
All Counsel