UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTONIO J. ORTIZ-CARBALLO

    Plaintiff,

v.                                    CASE NO.: 5:08-CV-00165-WTH-GRJ

DAVID R. ELLSPERMANN, in his individual
and in his official capacity as CLERK OF THE
CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

    Defendant.
_____/

## DEFENDANT, DAVID R. ELLSPERMANN'S, MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM OF LAW IN SUPPORT THEREOF[1]

Defendant, DAVID R. ELLSPERMANN ("Ellspermann"), in his individual capacity, by and through his undersigned attorneys and pursuant to Fed. R. Civ. P. 56, and Local Rule 3.01, hereby requests entry of Summary Judgment in his favor and against Plaintiff, ANTONIO ORTIZ-CARBALLO, and as grounds therefore state:

1.    This action arises from Plaintiff's employment with the Clerk. Plaintiff has brought suit against Ellspermann in his individual capacity pursuant to 42 U.S.C. §§1981 and 1983 for disparate treatment (Count III); hostile work environment (Count VI); disparate impact discrimination (Count IX); and retaliation (Counts III and VI). Plaintiff also seeks punitive damages against Ellspermann.

---

[1] A Motion for Summary Judgment and incorporated Memorandum of Law, filed on behalf of David Ellspermann in his official capacity as the Clerk of Court, Fifth Judicial Circuit In and For Marion County, Florida, is being filed concurrently with the instant Motion (hereinafter referred to as "Motion for Summary Judgment, Official Capacity"). Defendant will also cite herein to the Exhibits filed in support of the Motion for Summary Judgment, Official Capacity.

2. Defendant, Ellspermann, hereby adopts and incorporates by reference any and all facts and legal arguments raised in the Motion for Summary Judgment, Official Capacity which is being filed simultaneously with the instant Motion.

3. The pleadings, depositions, answers to interrogatories, affidavits, and other documents on file demonstrate there is no genuine issue as to any material fact and Defendant is entitled to judgment as a matter of law.

4. Defendant is entitled to summary judgment as a matter of law on Plaintiff's §1983 claims for the following reasons:

    a) Ellspermann did not personally participate in any alleged unconstitutional conduct;

    b) Plaintiff cannot establish a causal connection between Ellspermann's actions and the alleged constitutional deprivation; and

    c) Ellspermann is entitled to qualified immunity

5. Defendant is entitled to summary judgment as a matter of law on Plaintiff's claim for punitive damages because Plaintiff cannot establish that Ellspermann's conduct warrants punitive damages.

WHEREFORE, Defendant, DAVID R. ELLSPERMANN, in his individual capacity, respectfully requests the entry of Final Summary Judgment in his favor and against Plaintiff on all claims.

## MEMORANDUM OF LAW

**I.  SUMMARY JUDGMENT STANDARD**

The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Wouters v. Martin County*, 9 F.3d 924,

928 (11th Cir. 1993), *cert. denied*, 115 S. Ct. 65 (1994). Summary judgment may be granted when the evidence in the record establishes there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of production. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In this regard, Defendant must identify "those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Tipton v. Bergrohr GMBH-Siegen*, 965 F. 2d 994, 998 (11th Cir. 1992), *cert. denied*, 507 U.S. 911 (1993). When the burden has been met by the moving party, "the burden shift[s] to the non-moving party to demonstrate there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F. 2d 604, 608 (11th Cir. 1991). The "mere existence of a scintilla of evidence to support Plaintiff's position will be insufficient. . . ." *Early v. Champion Int'l Corp.*, 907 F. 2d 1077, 1080 (11th Cir. 1990). ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

## II.     **PLAINTIFF'S §1983 CLAIMS FAIL AS A MATTER OF LAW.**

### A.     **Plaintiff Cannot Establish That Ellspermann Is Liable Under § 1983**

In order to prevail on the merits in a §1983 action against a defendant in his individual capacity, the plaintiff generally must show that he was personally involved in acts or omissions that resulted in the constitutional deprivation. *Hale v. Tallapoosa County,* 50 F. 3d 1579, 1582 (11th Cir. 1995). It is well established in the Eleventh Circuit that supervisory officials are not liable under §1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999);

*Gonzalez,* 325 F.3d at ----, 2003 WL 1481583, at *4; *Cottone v. Jenne,* 326 F.3d 1352, 1360 (11th Cir. 2003); *Belcher v. City of Foley, Ala.,* 30 F.3d 1390, 1396 (11th Cir. 1994); *Braddy v. Florida Dep't of Labor and Employment Security,* 133 F.3d 797, 801 (11th Cir. 1998) (For a supervisor to be liable under section 1983, his liability must be based on something more than the theory of respondeat superior); *Danley v. Allen* 540 F. 3d 1298, 1314 (11th Cir. 2008).

A supervisor may be individually liable under §1983 only when: (1) the supervisor personally participates in the alleged unconstitutional conduct; or (2) there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation. *Lloyd v. Van Tassell* 318 Fed. Appx. 755, 760, (11th Cir. 2009). A causal connection is established when the supervisor was on notice, by a history of widespread abuse, of the need to correct a practice that led to the alleged deprivation, and he failed to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences. *See Brown v. Crawford,* 906 F.2d 667, 671 (11th Cir.1990). The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. *Id.; Gonzalez,* 325 F. 3d at 1234.

**B.   Ellspermann Did Not Personally Participate In The Alleged Unconstitutional Conduct**

Plaintiff's claims against Ellspermann stem from Ellspermann's role in terminating Plaintiff's employment with the Clerk's Office on June 12, 2006. The only identifiable alleged unconstitutional conduct, either in the Amended Complaint or identified by Plaintiff during his deposition, is that during the meeting on June 11, 2006 Ellspermann purportedly reprimanded Plaintiff for speaking Spanish at work and told Plaintiff he could not speak Spanish while at work.

As an initial matter, it is the policy of the Clerk's Office that all official business must be conducted in English because it provides English speaking supervisors with the ability to manage the office by knowing what is being said; enables non-Spanish speaking employees to understand what is being said; and allows English speaking supervisors to understand what is being said to customers so they can, in turn, evaluate employees in all work-related communications. This is particularly important in the Domestic Violence Division to which Plaintiff was assigned. [Exhibit 10 at ¶ 9]

Contrary to Plaintiff's assertion, Ellspermann did not issue a blanket prohibition with regard to Plaintiff speaking Spanish while at work. Instead, Ellspermann informed Plaintiff that while all official business of the Clerk's Office is required to be conducted in English, Plaintiff could continue to act as a translator and speak Spanish when not performing official business of the Clerk's Office. [Exhibit 1 at p. 213] This is supported by Emilia Torres, Plaintiff's former co-worker, who is also Puerto Rican and who testified regarding the purported prohibition on speaking Spanish at work. Torres testified that while Plaintiff informed her that Ellspermann stated all official business had to be conducted in English, he did not issue a complete prohibition on speaking Spanish at the office. [Exhibit 13 at pp. 62, 77, 90]

Plaintiff was never disciplined for speaking Spanish nor told he could not speak Spanish at any time prior to his termination. [Id. at pp. 213-15] Likewise, Torres testified she was never told she could not speak Spanish nor is she aware of any other employee being told the same. [Exhibit 13 at pp. 56, 57, 69, 70] In fact, the first time Torres heard any such thing was from Plaintiff after he was terminated.

Plaintiff unequivocally testified that Ellspermann did not harbor any discriminatory animus towards him at the time the Clerk hired him, evaluated his performance, and approved

5

his promotion, but instead, always treated Plaintiff with respect and professionalism prior to the day of his termination. [Exhibit 1 at pp. 205, 287-89] Torres also testified that Ellspermann always treated her with respect and professionalism and never made any employment decision based on an employee's race or national origin. [Exhibit 13 at pp. 64-65] She further testified she never heard any other employee use any sort of racial or ethnic slurs and that Ellspermann would not have tolerated that kind of behavior. [Id. at p. 72]

It is important to note that Plaintiff admittedly never once complained to Ellspermann during his entire employment with the Clerk's Office about harassment or discrimination based on race or national origin. [Exhibit 1 at pp. 211-12] Plaintiff's contention that the Clerk suddenly developed a discriminatory motive at the time of Plaintiff's discharge is simply not credible. Indeed, Plaintiff cannot demonstrate *any* evidence the Clerk actively participated in and impliedly authorized any discrimination against Plaintiff. [Id. at 286]

Even assuming *arguendo* that Ellspersmann did indeed make a solitary statement prohibiting the speaking of Spanish in the office, it is insufficient to rise to the level of a constitutional violation because such an instruction does not violate any federally protected rights. In fact, it has long been held that an English-only rule by an employer does not violate Title VI as applied to bilingual employees so long as there is a legitimate business purpose for the rule. *See Gonzalez v. The Salvation Army,* WL 11009379 (M.D. Fla. 1991) *aff'd,* 985 F. 2d 578 (11th Cir. 1993), *cert. den.* 508 U.S. 910 (1993); *Garcia v. Gloor,* 975 F. Supp. 1349, 1354 (5th Cir. 1980); *Prado v. L. Luria & Son, Inc.,* 975 F. Supp. 1349, 1354 (S.D. Fla. 1997) (holding English-only rule did not constitute national origin discrimination). Additionally, the State of Florida clearly recognizes English as the official language of this State. *See Florida Constitution, Article II, Section 9.* Indeed, on January 9, 1989, Former Governor, Bob Martinez,

Florida's first Hispanic Governor, issued an executive order declaring English the official language of the State of Florida. The governor directed that "all official records, reports, and proceedings required by law to be maintained by state or local governments shall be in the English language." *See commentary, Article 11, Section 9.*

In *Gonzalez,* a supervisor received complaints from both non-Spanish speaking employees and clients that conversations by employees who spoke Spanish, while in a conference area at work, where employees often took their breaks and lunch periods, made them feel uncomfortable and was unprofessional. *Gonzalez,* WL 11009379 at * 2. As a result, the supervisor requested the Spanish-speaking employees speak only English within the conference area except when speaking to Spanish-speaking clients. *Id.* The bilingual plaintiff in *Gonzalez* filed a lawsuit for national origin discrimination based on the English-only rule. *Id.* at * 3. This Court held that the English-only rule served legitimate business purposes because it allowed English-speaking supervisors the ability to manage the department by knowing what was being said and providing non-Spanish speaking employees the ability to understand what was being said within hearing distance of such employees. *Id.* The Court further found that the enforcement of an English-only rule under circumstances, such as in the instant case, where co-employees who are working or customers who visit the employer's establishment for business purposes can overhear conversations is not a violation of Title VII as applied to a person who has the ability to speak English. *Id.* This decision was later affirmed on appeal by the Eleventh Circuit. *Gonzalez,* 985 F. 2d 578 (11th Cir. 1993).

Like the plaintiff in *Gonzalez,* the Plaintiff in the instant case is bilingual and has the ability to speak English. Like the employer in *Gonzalez*, Ellspermann had legitimate concerns for implementing the English-only rule, namely providing Plaintiff's supervisors and co-workers

the ability to understand what was being said to the victims of domestic violence and their families. Ellspermann has proffered identical reasons for implementing the English-only rule, and thus, like the supervisor in *Gonzalez,* Ellspermann's enforcement of such a rule does not constitute a constitutional violation.

In *Garcia,* the employer implemented a rule prohibiting employees from speaking Spanish on the job unless they were communicating with Spanish speaking customers. *Garcia,* 618 F. 2d at 266.[2] The plaintiff in *Garcia* alleged this prohibition constituted national origin discrimination. *Id.* The Fifth Circuit rejected this contention on the basis that there is no authority giving a person the right to speak any particular language while at work and that the rules of the workplace, unless imposed by statute, are made by collective bargaining or by the employer. *Id.* As in the instant case, the prohibition in *Garcia* was confined to the work place and work hours; it did not apply to conversations during breaks or other employee free-time. Accordingly, as in *Garcia,* the prohibition on speaking Spanish while at work does not constitute national origin discrimination, and thus, Plaintiff's constitutional rights were not violated.

The record evidence simply does not support any contention that Ellspermann actively participated in and impliedly authorized the harassment, discrimination or retaliation against Plaintiff. In the instant case, Ellspermann's involvement was limited to hiring Plaintiff, providing him with positive evaluations, approving his promotion to the position of Clerk II and eventually terminating Plaintiff's employment due to his lack of respect for his supervisor, his refusal to comply with an order issued by his supervisor and his unprovoked and unsubstantiated accusations against his supervisor. [Exhibit 10] The solitary statement purportedly made by

---

[2] *See Bonner v. City of Pritchard,* 661 F. 2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all Fifth Circuit cases decided prior to October 1, 1981).

Ellspermann is insufficient to show Ellspermann personally participated in unconstitutional conduct. Further, clearly established law holds that if Ellspermann had decided to institute a blanket prohibition, as alleged by Plaintiff, that in and of itself does not constitute a violation of Plaintiff's federally protected rights.

C. **Plaintiff Cannot Establish A Causal Connection Between Ellspermann's Actions And The Alleged Constitutional Deprivation**

Since Plaintiff has failed to establish that Ellspermann personally participated in the alleged constitutional violation, the only other way he can establish a claim for supervisor liability against Ellspermann is by demonstrating a causal connection between Ellspermann's actions and the alleged constitutional deprivation.

The causal connection between Rodriguez, Kingsley or Landers' alleged offensive behavior and Ellspermann's liability as their supervisor for such behavior is established if the harassment and discrimination were sufficiently widespread so as to put Ellspermann on notice of the need to act and he failed to do so. *See Braddy,* 133 F. 3d at 802. The Eleventh Circuit has held that a few isolated instances of harassment or discrimination will not suffice, the "deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration." *Id.* (citing *Brown,* 906 F. 2d at 671).

In the instant case and as noted *supra,* Plaintiff never complained to Ellspermann about discrimination at any time during his employment, up to and including the date he was terminated. Moreover, even assuming that Plaintiff's allegations are true, he has only been able to identify four purported instances of harassment/discrimination that occurred over a two year period of time. [*See* Motion for Summary Judgment, Official Capacity, Section III, B] Clearly, these few isolated instances do not constitute a widespread practice sufficient to put Ellspermann on notice. The purported comments, when viewed either individually or collectively, are not

9

obvious, flagrant, rampant and of continued duration. The record is devoid of even a scintilla of evidence that Ellspermann directed any of his subordinates to act unlawfully and failed to stop them from doing so. Here, the usual basis for imposing liability upon a supervisor is nonexistent. Indeed, based on Torres' testimony *supra* it is clear that Ellspermann did not harbor any discriminatory animus towards Hispanics or Puerto Ricans and would not have allowed race or national origin discrimination to occur in the workplace. Since Plaintiff has failed to state a claim against Ellspermann under §1983 for supervisor liability, summary judgment must be entered in favor of Ellspermann.

### III. ELLSPERMANN IS ENTITLED TO QUALIFIED IMMUNITY

#### A. Qualified Immunity Generally

A defendant may also seek summary judgment on the ground that he is entitled to qualified immunity. *Crosby v. Monroe County,* 394 F.3d 1328, 1332 (11th Cir. 2004). The qualified immunity analysis is conceptually distinct from the analysis of the merits of the claim. *Marsh v. Butler County, Ala.,* 268 F.3d 1014, 1030 (11th Cir. 2001). Even if a plaintiff presents evidence to support a §1983 claim on the merits, a defendant sued in his individual capacity may be entitled to qualified immunity. *Id.* at 1030; *Hardy v. Town of Hayneville*, 50 F.Supp.2d 1176, 1189 (M.D. Ala. 1999).

Qualified immunity offers a complete protection for government officials sued in their individual capacities if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson,* 311 F. 3d 1340, 1346 (11th Cir.2002) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)); *Lancaster v. Monroe County, Ala.,* 116 F. 3d 1419, 1424 (11th Cir.1997). Qualified immunity is designed to allow government officials to avoid the expense

and disruption of going to trial, and is not merely a defense to liability. *Ansley v. Heinrich,* 925 F. 2d 1339, 1345 (11th Cir.1991). The Supreme Court has referred to the qualified immunity analysis as the "objective-reasonableness" test. *Harlow v. Fitzgerald,* 457 U.S. 800, 815-19 (1982). That is, if reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *See Storck*, 345 F. 3d at 1314 (citing *Hunter v. Bryant*, 112 S. Ct. 534 (1991)).

An official asserting qualified immunity must first demonstrate he was acting within the scope of his discretionary authority. *Vinyard,* 311 F. 3d at 1346. An official may show that an act was within his discretionary authority merely by showing that the acts "(1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.' " *Jordan v. Doe,* 38 F.3d 1559, 1566 (11th Cir. 1994); *Crosby,* 394 F. 3d at 1332 (A defendant was performing a discretionary function if the acts he undertook fell within his job responsibilities).

"Once the defendants establish that they were acting within their discretionary authority, the burden shifts to the plaintiff to demonstrate that qualified immunity is not appropriate." *Lumley v. City of Dade City,* 327 F. 3d 1186, 1194 (11th Cir. 2003). Traditionally, a court first determines whether the official's conduct amounted to a constitutional violation. *Saucier v. Katz,* 533 U.S. 194, 201, (2001). Second, the court analyzes whether the right violated was "clearly established" at the time of the violation. *Id.* The intention is to ensure that before they are subjected to suit, officials are on notice that their conduct is unlawful. *Id.* at 206. Thus, if the violated right was not clearly established, qualified immunity still applies. *Id.* at 201. The Supreme Court recently clarified the *Saucier* two-step process explaining that the order of the inquiry is fluid, providing the Court with the flexibility to focus on the determinative question. *Pearson v. Callahan,* 555 U.S. ----, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009). The Supreme Court

recognized that discussion of a constitutional violation may become unnecessary for qualified immunity purposes when the right was not clearly established. *Id.* It is therefore not mandated that courts examine the potential constitutional violation under *Saucier* step one prior to analyzing whether the right was clearly established under step two. *Lewis v. City of West Palm Beach*, 561 F. 3d 1288, 1291 (11th Cir. 2009); *Lloyd v. Van Tassell*, 318 Fed. Appx. 755, 758, 2009 WL 179622, 2 (11th Cir. 2009).

In *Hope v. Pelzer*, 536 U.S. 736 (2002), the Supreme Court explained what is required for a right to be clearly established in the context of qualified immunity:

> For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

Id. at 742.

A plaintiff may establish that reasonable governmental officials have fair warning that the conduct was unconstitutional via the traditional method of pointing to a materially similar case that has already decided that what the official was doing was unlawful. *Lee v. Ferraro,* 284 F.3d at 1188, 1198 (11th Cir. 2002). Alternatively, a plaintiff may show that the law was clearly established by demonstrating that the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to particular conduct and circumstances and to overcome qualified immunity, even in the total absence of case law. *Vineyard v. Wilson*, 311 F. 3d 1340, 1350 (11th Cir. 2002). The second alternative permits a plaintiff to demonstrate that the law was clearly established, in the absence of controlling precedent, only if the words of a federal statute or federal constitutional provision are so patently clear and the conduct so obviously unlawful that materially similar case

law is not needed. *Willingham v. Loughman*, 321 F. 3d 1299, 1301 (11th Cir. 2002). In other words, where there is obvious clarity that the official's conduct is unconstitutional, qualified immunity does not afford protection. *See Hope*, 122 S. Ct. at 2516.

Only in exceptional cases are the words of a federal statute or constitutional provision specific enough, or the general constitutional rule already identified in decisional law so clearly applicable, so that specific case law is not required. *See id.* at 1339 n. 6. "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Lassiter v. Alabama A & M Univ., Bd. of Trustees,* 28 F.3d 1146, 1150 (11th Cir.1994) (internal quotations and citations omitted). The second aspect of the inquiry is purely objective and turns upon whether the official could reasonably have believed his or her conduct to be lawful in view of clearly established law and the information possessed by the official at the time the conduct occurred and ensures the defendant had fair and clear notice that his action was unconstitutional. *Harlow*, 102 S. Ct. at 2738; *Hardin v. Hayes*, 957 F. 2d 845, 848 (11th Cir. 1992); *Marsh,* 268 F.3d at 1031.

Whether a plaintiff seeks to demonstrate fair warning via binding precedent or by obviously unlawful nature of the conduct, the plaintiff must nevertheless demonstrate that no reasonable official would have considered the conduct lawful at the time of the alleged violation. *Id.* If reasonable public officials could differ on the lawfulness of a defendant's actions, the defendant is entitled to qualified immunity. *Malley*, 106 S. Ct. at 1096; *Hunter*, 502 U.S. at 228-229 (officials entitled to qualified immunity if decision was reasonable, even if mistaken). Thus, it is the plaintiff's burden to come forward with evidence which, if true, establish that a reasonable official could not have believed, based upon the facts available to him at the time of his conduct, that the official's conduct was lawful in light of the clearly established law.

*Johnson v. Clifton*, 74 F. 3d 1087 (11th Cir. 1196).

**B.     Ellspermann Clearly Acted Within The Scope Of His Discretionary Authority**

Ellspermann clearly meets the first prong of the qualified immunity analysis. To determine whether an official was engaged in a discretionary function, we consider whether the acts the official undertook are of a type that fell within the employee's job responsibilities. *Crosby*, 394 F.3d at 1332. "Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description." *Holloman ex rel. Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir.2004). Here, it cannot be seriously contested that decisions concerning hiring, supervision and termination of employees do not fall within the discretionary authority of the Clerk of Court: Ellspermann.

**C.     Plaintiff Cannot Establish A Constitutional Violation**

Since Ellspermann has demonstrated that he was acting within his discretionary authority, the burden shifts to the Plaintiff to establish a constitutional right was violated. However, as set forth in detail *supra* in Section II B, the purported comments, statements and/or actions are insufficient to rise to the level of a constitutional violation. Accordingly, Plaintiff fails to meet his burden of establishing a constitutional violation.

**D.     The Law Was Not Clearly Established**

A right may be clearly established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional right; (2) a broad statement of principle within the Constitution, statute, or case law that clearly establishes a constitutional right; or (3) conduct so egregious that a constitutional right was clearly violated,

even in the total absence of case law. *Long v. Slaton,* 508 F. 3d 576, 584 (11th Cir. 2007); *Mercado v. City of Orlando,* 407 F. 3d 1152, 1159 (11th Cir.2005).

Here, case law does not provide the necessary precedent, either specifically or through broad principles, to clearly establish the right to speak Spanish while conducting one's job duties. To the contrary, clear and binding precedent has been established in the Eleventh Circuit and the District Courts of Florida that a prohibition on speaking Spanish while conducting official business matters does not constitute national origin discrimination. *See Gonzalez, Garcia,* and *Prado, supra.* As such, the law is clearly established that the implementation of an English-only rule in the workplace during work hours does not violate any constitutional right. Thus, Ellspermann could have reasonably believed his conduct to be lawful in light of the clearly established law and the information he possessed at the time he instructed Plaintiff that all official business must be conducted in English, with the exception that Plaintiff could speak Spanish when acting as a translator, assisting Spanish-speaking customers or when not performing the official business of the Clerk's Office.

In light of the above, Plaintiff cannot establish that Ellspermann had fair warning via binding precedent or by the obviously unlawful nature of the conduct that he was violating clearly established law. Moreover, no reasonable official would have considered Ellspermann's conduct unlawful at the time of the alleged violation. Clearly, Plaintiff has failed to meet his burden of demonstrating that qualified immunity is inappropriate and summary judgment should be entered in Ellspermann's favor.

IV. **ELLSPERMANN IS ENTITLED TO JUDGMENT AS A MATTER OF LAW WITH RESPECT TO PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES.**

Generally, before an award of punitive damages is authorized in a civil rights action, evidence must be presented that the individual defendant's conduct is motivated by evil motive or intent,

or that it involved reckless or callous indifference to the federally protected rights of others. *Anderson v. City of Atlanta,* 778 F. 2d 678, 688 (11th Cir. 1985) (citing *Smith v. Wade,* 461 U.S. 30, 35-36 (1983)). The function of punitive damages is to punish defendants for malicious or grossly wrong conduct and to deter similar conduct by others. Punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence. *State Farm Mutual Automobile Insurance Co. v. Campbell,* 538 U.S. 408 (2003); *Martinez v. Brinks, Inc.,* 410 F.Supp.2d 1202 (S.D. Fla. 2004).

Here, there is no record evidence that warrants the imposition of an award of punitive damages. *See Anderson,* 778 F. 2d at 678 (striking award of punitive damages because evidence did not support supervisor had evil motive or acted with reckless or callous indifference); *Brantley v. City of Macon,* 390 F. Supp. 2d 1314 (M.D. Ga. 2005) (granting summary judgment to individual defendant due to plaintiff's failure to complain and demonstrate blatant indifference to his complaints). To the contrary, the record is clear that Plaintiff never complained to Ellspermann about harassment or discrimination prior to his termination. Likewise, there is not a shred of evidence that Ellspermann had an evil motive or intent to infringe upon Plaintiff's federally protected rights or that his actions were so egregious as to constitute reckless or callous indifference. Therefore, an award of punitive damages cannot stand and Ellspermann is entitled to summary judgment with respect to this claim.

**V.     CONCLUSION**

Based on the foregoing, Defendant, DAVID R. ELLSPERMANN, in his individual capacity, respectfully requests the entry of Final Summary Judgment in his favor and against Plaintiff on all claims.

Ortiz-Carballo v. Ellspermann
Case No. 5:08-CV-00165-WTH-GRJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 31st day of July, 2009, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and that a copy of the following will be provided to Antonio Ortiz-Caballo via U.S. Mail.

    /s/ *Cindy A. Townsend*
MICHAEL J. ROPER, ESQ.
Florida Bar No. 0473227
mroper@bellroperlaw.com
CINDY A. TOWNSEND, ESQ.
Florida Bar No. 0788961
ctownsend@bellroperlaw.com
Bell, Roper & Kohlmyer, P.A.
2707 East Jefferson St.
Orlando, FL 32803
407-897-5150 - Telephone
407-897-3332 - Facsimile
Attorneys for Defendant