FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

2009 AUG 14  PM 2: 10

CLERK, U.S. DISTRICT COURT
OCALA, FLORIDA

**ANTONIO J. ORTIZ-CARBALLO**
Plaintiff

v.

**DAVID R. ELLSPERMANN**
Defendant

CASE NO.: 5:08-CV-00165-WTH-GRJ

### PLAINTIFF'S, ANTONIO J. ORTIZ-CARBALLO, OPPOSITION FOR SUMMARY JUDGMENT MOTION

I, Plaintiff, ANTONIO J. ORTIZ-CARBALLO, oppose to Defendant's, DAVID R. ELLSPERMANN, in his official capacity as the Clerk of the Court and in his individual capacity, Motion for Summary Judgment, and as grounds therefore state:

-On August 15, 2005 I was hired under contract with Temporary Job Agency, "Spherion", to cover the maternity leave of Mrs. Emila Torres in the Domestic Violence Division, of the Clerk of the Court's Office. I was then asked to stay in the Division when an additional position was added and I was hired on November 18, 2005. On August 15, 2005, I was assigned to Mrs. Torres' desk in the division and I informed Mrs. Denise Kingsley that a high ringer tone volume of the assigned telephone startled me. She indicated that if I was capable of properly answering the telephone I could keep it as low as I needed. This was a verbal agreement between she and I.

-On March 29, 2007 Mrs. Kingsley sent an email indicating that the ringer tone volume on the telephones was to be kept on level 4 because calls being transferred from the Family Civil Division were going unanswered. While I was sitting at my desk my ringer continued to be low for I would always answer it usually before the second ring. I did not have anything to do with any other telephones.

-On April 3, 2007, Mrs. Kingsley asked me why the ringer tone volume of the telephone I was assigned to was low and I reminded her of her verbal agreement of August 15, 2005, indicating that she had authorized that I could keep the ringer at any level due to being startled with loud noises. After this she reprimanded me with a memorandum. She had never brought up this subject of my low ringer tone volume of the telephone assigned to me, in any way, nor was there any mention of it in any of my excellent evaluations, for the calls I answered were usually picked up on the first or second ring.

-On April 4, 2007, I sent Mr. David R. Ellspermann a letter indicating that the action taken by Mrs. Kingsley was in retaliation to letter of March 5, 2007.

-On April 23, 2007, I was asked to meet with Mr. Jack Seuss and Mrs. Jaymi Kudary and they stated that I was to follow any instructions received by Mrs. Kingsley indicating that I was to follow instructions which were not immoral or illegal and then if necessary I should have spoken with them. I told them that this was a clear act of retaliation from Mrs. Kingsley's part due to my indications of improper conduct of my immediate co-workers but they did not acknowledge this information in the memorandum. Mr. Seuss said that he was aware of the issues involving the Domestic Violence co-workers and Mrs. Kudary said that she was dealing with them. I made it clear that I had followed what I thought was the correct chain of command, first with at least four verbal communications with Mrs. Kingsley, than the meeting with Mrs. Landers after giving her a letter indicating the co-workers' misconduct and then the letter to Mr. Ellspermann.

-On May 1, 2007, I met with Mr. Seuss and Mrs. Kudary and I was given two choices of which I chose to lower the ringer volume tone of the telephone assigned to me and that when I would need to leave the desk I was to increase the volume of the ringer tone. I clearly stated that I had no control over what happened when I was not present.

-On June 11, 2007, I was asked to step in to Mr. Ellspermann's office. His very first question was if I spoke Spanish in the office and I said yes, that I translated from Spanish to English for the customers who needed so and that I would speak Spanish to co-worker and then "Senior Clerk", Mrs. Torres when there was no other co-worker present. If I was aware that another co-worker was present we would automatically continue to speak in English. He then said, and I quote, "There is to be "NO" Spanish spoken in my office.", end of quote.
I was employed in the Clerk's office as a Clerk II and I never asked to speak Spanish. It was Mrs. Kingsley whom asked me why I was not on the list of translators provided by the Clerk's internal website, "Intranet", to which I asked her, Do you want me to be?, and she said yes. She then said that she would immediately request that my name be placed on that list. I never had access to update any information on that internal Website, the request was only made by her.

-At this moment there were no administrative issues between Mrs. Kingsley and myself. She would now be physically observing me, meeting discreetly with Mrs. Roseanne Anderson and Mrs. Jennifer Rodriguez and would log everything in her computer which was openly available to see because we had the need to use her office to scan items related to our work. At this moment I indicated to all present that Mrs. Kingsley was trying to sabotage my work, in retaliation of my verbal observations of my co-workers, to which she did not say a word.

2

-It was at this moment of the brief meeting that Mr. Ellspermann asked that I resign. He asked if I had vacation time, I said yes, he said to write a resignation letter making it effective at the conclusion of that time, to do so right then. He indicated that it was to state that it was due to differences with the Supervisor.
 I was shocked and I asked him if this was his final decision and he said yes. I asked if I could please leave the office at that moment and he agreed. Then I shook everyone's hand and left the office.

-The next day, June 12, 2007, I called Mr. Ellspermann and was transferred to Mrs. Kudary. I told her that I had no reason to resign to please tell Mr. Ellspermann that I would not. She responded and I quote, "I am so sorry for what happened ."

-I then received a letter from Mr. Ellspermann indicating that I was terminated due to being disrespectful and disruptive. The reason I was terminated was changed. In response to my unemployment request he was asked to respond why I was terminated and then indicated that it was insubordination to which the Agency requested written proof of such and he never responded to.

-Mrs. Kingsley indeed referred to Mrs. Torres as, and I quote, "that little Hispanic girl", and I quote again, "I will never hire another Hispanic person again". She did discriminate in this way.

-Mrs. Jennifer Rodriguez, whom maiden's name is Mrs. Jennifer Basciano, indeed said in a negative way and I quote, "just like my mother-in law, all Hispanics are the same".

-Mrs. Torres, did not clarify the nature of the discriminatory acts against her because she was intimidated by Mr. Ellspermann whom, through his counsel, reminded Mrs. Torres the day of her deposition that he had organized a money and food collection in the Clerk's office to help her family. This statement was a clear manipulation that he was and is a big factor on her receiving any future promotion or positive reference in her career. She resigned from the Senior Clerk position. She accepted a position of less income.

-Mr. Ellspermann did indeed make the comment and I again quote, "there is to be "No" Spanish spoken in my office" He has and continuous to discriminate. He has not been fair with other employees as well.
He did so with two previous employees,  Mrs. Jan Cox, African-American, terminated in in June 2006 and Mrs. Melba Garay, Hispanic, terminated in January 2008 both due to being related to partners with criminal backgrounds, and not doing the same with Mrs. Jennifer (Basciano) Rodriguez, Caucasian and one of the Domestic Violence co-workers who's husband was incarcerated during the beginning of her employment in the court and having her own active misdemeanor and felonies cases.

3

## CONCLUSION

-Based on the foregoing, I Plaintiff, Antonio J. Ortiz-Carballo, respectfully request the Defendant's Motion for Summary Judgment be denied.

## CERTIFICATE OF SERVICE

*[signature]*
Antonio J. Ortiz-Carballo
1748 NE 60th Street
Ocala, Florida 34479-1741
352-875-6241

I certify that August 13, 2009, a copy of the foregoing has been via US Mail to: Michael J. Roper 2707 East Jefferson Street Orlando, FL 32803