UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

ANTONIO J. ORTIZ-CARBALLO

    Plaintiff,

v.                                                                          CASE NO.: 5:08-CV-00165-WTH-GRJ

DAVID R. ELLSPERMANN, in his individual
 and in his official capacity as CLERK OF THE
CIRCUIT COURT, FIFTH JUDICIAL CIRCUIT
IN AND FOR MARION COUNTY, FLORIDA

    Defendant.
_____/

**<u>DEFENDANT, DAVID R. ELLSPERMANN, IN HIS OFFICIAL CAPACITY
AS CLERK OF THE CIRCUIT COURT'S, REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Defendant, DAVID R. ELLSPERMANN, in his official capacity as the CLERK OF THE CIRCUIT COURT ("Clerk"), by and through his undersigned attorneys and pursuant to Fed. R. Civ. P. 56(c)(1)(C), (revised March 26, 2009 and effective December 1, 2009), hereby files his Reply Memorandum to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (hereinafter referred to as "Response"), and as grounds therefore state:

**I.     <u>FACTS CITED BY PLAINTIFF:</u>**

The factual issues raised by Plaintiff are irrelevant because they do not go to the issues of race or national origin discrimination and/or retaliation.  Further, Plaintiff's version of the facts includes numerous misrepresentations, inaccuracies and mischaracterizations of the deposition testimony elicited in this matter.   However, even when viewed in the light most favorable to the Plaintiff, those facts do not preclude the entry of summary judgment in Defendant's favor.

Plaintiff contends the animus between Anderson, Rodriguez and Torres was race based, however, there is no record evidence to support that contention. To the contrary, Torres herself testified race and national origin played no role in her problems with Rodriguez and Anderson and she never felt any of her supervisors, co-workers and/or the Clerk harbored discriminatory animus towards her. (Defendant's Exhibit 13 pp. 35, 48, 64, 65, 66, 72) Additionally, the "issues" listed in Plaintiff's April 4, 2007 letter were the inability of the "ladies" to get along and that he had been moved to a different desk to improve the relationship between the "ladies". (Plaintiff's Exhibit 12) It is devoid of any mention of the friction being based on Torres' race or national origin.

There is no documented complaint made by Plaintiff prior to his termination that he was being discriminated against based on his race or national origin. Indeed, Plaintiff admitted during his deposition that not once did he submit a written complaint of discrimination nor during any of the meetings held to discuss his complaints about his co-workers did he complain about discrimination based upon race or national origin. (Defendant's Exhibit 1 at pp. 126-27; 130-32; 142; 225-26) To the contrary, Plaintiff admittedly never mentioned the words "race," "discrimination," "Hispanic," "national origin," or "harassment" in his March 5, 2007 Memorandum to Landers. Moreover, Plaintiff's April 4, 2007 letter to the Clerk is devoid of any mention or reference to race or national origin discrimination. (Plaintiff's Exhibit 12)

At the time the Clerk held the June 11, 2007 meeting there was no intent to terminate Plaintiff's employment. (Ellspermann, 48) Instead the meeting was held to try and resolve Plaintiff's complaints and issues with his supervisor. *Id.* This is supported by the termination memorandum sent to Plaintiff on June 13, 2007 which clearly states that the Clerk's decision to terminate Plaintiff was based on the two previous incidents of insubordination as well as

Plaintiff's conduct during the June 11, 2007 meeting wherein he confronted and accused his supervisor of sabotaging his career and trying to get him fired. (Plaintiff's Exhibit 16) Even though Plaintiff would like this Court to believe that the decision to terminate his employment was made in a vacuum, this is simply not true. Indeed, Plaintiff even admits that the reason for the June 11, 2007 meeting was an effort to try and resolve the issues between Plaintiff and his supervisor. The Clerk was aware of the events that had transpired before and those events were factored into his decision to terminate Plaintiff. (Plaintiff's Exhibit 18; Ellspermann, 52, 90-93) The Clerk's reasons for Plaintiff's termination have been consistent as evidenced by the termination memorandum and the Clerk's deposition testimony. (Plaintiff's Exhibit 16); (Ellspermann, 52, 90-93)

The Clerk disputes that he issued a blanket prohibition to Plaintiff regarding speaking Spanish at work. Even assuming the Clerk had decided to institute a blanket prohibition on speaking Spanish, the record evidence demonstrates he had legitimate business reasons for doing so. Moreover, clearly established law holds that such a prohibition in and of itself does not constitute a violation of Plaintiff's federally protected rights. Thus, any such prohibition is not sufficient to infer the Clerk harbored any discriminatory animus towards Plaintiff. Indeed, the record evidence shows that the Clerk hired, promoted and awarded Plaintiff pay increases. As such, Plaintiff's contention that the Clerk suddenly developed a discriminatory motive at the time of Plaintiff's discharge is simply not credible.

## II.     THE ISSUES IN THIS CASE ARE FRAMED BY THE COMPLAINT

Plaintiff, for the first time, in his Response alleges that he was denied equal protection of the laws. The case law is clear that a party cannot amend his complaint to add a new claim through argument in a brief opposing summary judgment. *Powell v. Duval County Sch. Bd.,*

2009 WL 3157588 (M.D. Fla. 2009) (citing *Champ v. Calhoun County Emergency Mgmt. Agency,* 226 F. App'x 908, 912 (11th Cir. 2007)).  Since that issue is not part of the Amended Complaint it cannot be properly raised before the Court.

### III.   PLAINTIFF CANNOT IDENTIFY ANY COMPARATORS

When a plaintiff alleges discriminatory discipline, to determine whether employees are similarly situated, we evaluate "whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown,* 171 F.3d 1364, 1368 (11th Cir.1999).  When making that determination, "[w]e require that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges."[1] *Id.*; *see Burke-Fowler v. Orange County, Fla., 4*47 F.3d 1319, 1323 (11th Cir. 2006).

Here, Plaintiff identifies Sandra Pruitt and Tammy McIntyre as alleged comparators who engaged in "similar" behavior but were treated more favorably.  However, neither are valid comparators because they did not engage in nearly identical misconduct, were not overseen by the same supervisor and both agreed to improve their behavior after meeting with the Clerk.  Pruitt's supervisor was Karen Rodgers and McIntyre's supervisor was Nicole Kendrick.  (Plaintiff's Exhibits 20, 21)  The quality of the misconduct by both Pruitt and McIntyre are different from Plaintiff's misconduct, in that, neither of them committed the misconduct in the Clerk's presence, unlike Plaintiff.  Further, neither Pruitt nor McIntyre refused to obey their supervisor's instruction they lower the ringer volumes on their telephones, questioned why they were being asked to change desks, or accused their supervisor of sabotaging their career and

---

[1] The Court noted that it was bound to follow the "nearly identical" standard rather than "similar misconduct" standard because when a later panel decision contradicts an earlier one, the earlier panel decision controls.  *Burke-Fowler,* 447 F.3d at 1323.

4

trying to get them fired. *Id.* Indeed, when both Pruitt and McIntyre met with the Clerk, as did Plaintiff, they both committed to improving and modifying their behavior. Plaintiff, on the other hand, confronted and challenged his supervisor in the Clerk's presence which caused the Clerk to determine that the employment relationship between Plaintiff and his supervisor was irreparably harmed.

Plaintiff also relies on the termination of Wanda Cryer, a Hispanic probationary employee, as circumstantial evidence of discrimination. Plaintiff alleges that Cryer was not provided with multiple opportunities to modify her behavior and like Plaintiff was summarily terminated. The record evidence is clear that Cryer was not supervised by the same supervisors as either Pruitt or McIntyre, never agreed to improve or modify her behavior and was not terminated for insubordination. Instead, she was terminated for poor job performance, attendance, punctuality, and dress code violations. (Plaintiff's Exhibit 22) Again, it is clear that Cryer did not engage in nearly identical conduct as either Pruitt or McIntyre. Because he has failed to establish valid comparators and presented no other circumstantial evidence, Plaintiff cannot establish a *prima facie* case of discrimination.

### IV.    NO EVIDENCE OF PRETEXT

Once a defendant has satisfied its burden of articulating a legitimate, non-discriminatory, business reason for its actions, the defendant is entitled to summary judgment "unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." *Garcia v. Henry Street Settlement,* 501 F.Supp.2d 531, 541 (S.D.N.Y. 2007)  To satisfy his ultimate burden of persuasion in this regard, the plaintiff must establish by a preponderance of the evidence that the defendant's proffered reasons are a pretext and that the real reason for the alleged adverse employment action was intentional discrimination. *Id.*

The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 146 (2000). Speculation, conjecture and guess-work cannot substitute for actual evidence of discrimination. *Garcia,* 501 F.Supp.2d at 541. Thus, it is incumbent upon the plaintiff to present specific facts, not conclusory allegations, speculation, surmise or feelings, to show the existence of genuine issues for trial. *Id.; see also Meiri v. Dacon*, 759 F.2d 989, 998 (N.Y. 1985) (To allow a party to defeat a motion for summary judgment by offering purely conclusory allegations of discrimination, absent any concrete particulars, would necessitate a trial in all Title VII cases).

To demonstrate pretext, the plaintiff may not simply "recast an employer's proffered nondiscriminatory reason or substitute his business judgment for that of the employer." *Thomas v. CVS/Pharmacy*, 336 Fed.Appx. 913, 914, 2009 WL 1956256, 2 (11th Cir. 2009) (citing *Chapman v. AI Transp.,* 229 F.3d 1012, 1030 (11th Cir.2000)). Instead, he must "meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Id.* The plaintiff must be able to show both that the employer's proffered reason was false and that the true motive for the action was discriminatory. S*ee St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515 (1993). The Supreme Court has held that courts do not act "as a super-personnel department that reexamines an entity's business decisions"; rather, we limit our inquiry to "whether the employer gave an honest explanation of its behavior." *Id.* (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991)).

Here, the record is devoid of any evidence that the Clerk was motivated by discriminatory animus towards Plaintiff. Moreover, Plaintiff's contention that the decision to terminate him must have been made for a discriminatory reason is also not enough to survive

summary judgment. That contention is pure speculation. Plaintiff has offered no concrete and specific facts that his race or national origin was the reason for his termination.

The record evidence clearly shows that the Clerk's decision to terminate Plaintiff was based on the two prior incidents of insubordination as well as Plaintiff's accusations against his supervisor, in the Clerk's presence, which showed that the employment relationship between Plaintiff and Kingsley could not be improved. Even though Plaintiff would like this Court to believe that the decision to terminate his employment was made in a vacuum, this is simply not true. Indeed, Plaintiff even admits that the reason for the June 11, 2007 meeting was an effort to try and resolve the issues between Plaintiff and his supervisor. The Clerk was aware of the events that had transpired before and those events were factored into his decision to terminate Plaintiff. (Plaintiff's Exhibit 18; Ellspermann, 52, 90-93)

Plaintiff contends that pretext is shown *vis a vis* the Clerk's alleged instruction that no Spanish is to be spoken in the office. English-only policies have repeatedly withstood challenge under Title VI. *See e.g., Dang v. Inn at Foggy Bottom,* 85 F.Supp.2d 39, 42 (D.D.C. 2000) (finding employer's inquiry into plaintiff's national origin (Vietnamese) and her direction that plaintiff speak English in the workplace do not facially reflect racial animus); *Hong v. Children's Memorial Hosp.,* 993 F.2d 1257, 1266 (7th Cir.1993) (employer's telling a Korean employee to "learn to speak English" did not present evidence of discriminatory animus); *Morales v. Dain, Kalman & Quail, Inc.,* 467 F.Supp. 1031, 1040 (D. Minn. 1979) (supervisor's telling Cuban employee to "speak English" did not make out a case of employment discrimination based on national origin).

Since the Clerk was the same person who hired, promoted, awarded pay increases and ultimately fired Plaintiff, there is a strong inference there was no discriminatory motive involved

7

in his decision.  Courts have held that where the same person was responsible for both hiring, promoting and firing the individual complaining of discrimination, a strong inference arises that there was no discriminatory motive.  *See e.g. Williams v. Vitro Svs. Corp.,* 144 F. 3d 1438 (11th Cir. 1998); *Bradley v. Harcourt Brace & Co.*, 904 F. 3d 267 (9th Cir. 1996); *Evans v. Technologies Applications*, 80 F. 3d 954 (4th Cir. 1996).  In essence, the courts have held a fair inference can be made that if a person doing the hiring/promoting was prejudiced against Hispanics or Puerto Ricans, they would not have hired/promoted that person in the first instance.  The same applies here because the Clerk hired, promoted, awarded pay increases and ultimately terminated Plaintiff's employment.  Thus, there is a strong inference the Clerk did not harbor any discriminatory or invidious motive with regard to Plaintiff's employment.

Moreover, Plaintiff has offered no reason why the Clerk would suddenly develop racial or national origin bias or choose to base his decision to terminate Plaintiff on such bias when he had not done so when making his decision to hire Plaintiff, to promote him to the Clerk II position, to award him pay increases, and to give him good performance evaluations.  It is doubtful that after doing all of these things the Clerk would then suddenly develop an aversion or animus to Plaintiff based on his race and national origin.  *See Avila Jostens, Inc.,* 554 F.Supp.2d 1248, 1259 (D. Kan. 2008) (finding it doubtful that a person who supervises a person of Mexican origin for more than year with no problems would terminate that person as a result of a sudden aversion to Mexicans).

The record evidence does not support Plaintiff's request that the Court impute to the Clerk an invidious motivation, with respect to his decision to terminate Plaintiff, inconsistent with his prior ongoing acts of hiring, promoting and awarding Plaintiff pay increases.

V.  **RETALIATION:**

In the instant case, Plaintiff has provided no probative evidence he engaged in any protected activity. While Plaintiff asserts that he was terminated almost contemporaneously when he questioned the Clerk's instruction that English should be spoken in the work environment, there is no record evidence to support such an assertion. To the contrary, the record evidence shows that Plaintiff never questioned or challenged the Clerk's instruction. Indeed, Plaintiff even admits in his deposition that the Clerk told him he could speak Spanish while on break or out of the office. (Carballo, 197)

Even assuming there was a causal connection between the alleged protected activity and Plaintiff's termination, the Clerk has proffered legitimate non-discriminatory reasons, namely, (1) providing English speaking supervisors in the domestic violence division of the Clerk's Office the ability to manage the office by knowing what was said to victims of domestic violence; (2) providing non-Spanish speaking employees the ability to understand what was being said; and (3) ensuring that supervisors understood what was being said to customers in order to evaluate employees in all work-related communications.

Plaintiff next argues that his letter to the Clerk, dated April 4, 2007, specifically states a complaint about retaliation. (Plaintiff's Exhibit 12) However, that letter is completely devoid of any allegations that the retaliation was based on discrimination and/or harassment. An employee must, at the very least, communicate his belief that retaliation or discrimination is occurring to the employer. *See Anderson v. Dunbar Armored, Inc.*, 2009 WL 2568062, 31 (N.D. Ga. 2009). It is not enough for the employee merely to complain about a certain policy or certain behavior of co-workers and rely on the employer to infer that discrimination has occurred. *Jurado v. Eleven-Fifty Corp.,* 813 F.2d 1406, 1411 (9th Cir. 1987) (affirming grant of summary judgment

and observing that Plaintiff had "not shown that he ever opposed the [policy] as discriminatory before he was fired. He merely opposed the [policy] for personal reasons")). Moreover, the Eleventh Circuit has emphasized that "a plaintiff's burden under this standard has both a subjective and an objective component. A plaintiff must not only show that [s]he subjectively (that is, in good faith) believed that [her] employer was engaged in unlawful employment practices, but also that [her] belief was objectively reasonable in light of the facts and record presented." *Little v. United Techs.,* 103 F.3d 956, 960 (11th Cir.1997).

Conclusory allegations without specific supporting facts have no probative value. *Anderson*, 2009 WL 2568062 at 32. Here, there is no evidence anywhere in the record to show that Plaintiff actually made any complaints to management regarding any discriminatory treatment towards him by Kingsley. The **only** evidence in the record of any complaint by Plaintiff is the letter to the Clerk where he stated he felt the reason Kinsgley was "trying to create a problem is in retaliation to a complaint I made to Mrs. Ozietta". This letter contains no statement which could be construed to either subjectively or objectively relate to retaliation based on discriminatory harassment or conduct by Kingsley or any person on a ground prohibited by federal law. In fact, the complaint in question actually addressed the inability of his female co-workers to get along and Kingsley's inability to resolve those issues.

Clearly, Plaintiff did not engage in any protected activity based on his general and conclusory allegation of retaliation without any specific supporting facts. *See Brown v. City of Opelika,* 211 Fed. Appx. 862, 864 (11$^{th}$Cir. 2006) (finding that plaintiff had not engaged in any protected activity because she never complained about racial discrimination or harassment); *see also Murphy v. City of Aventura,* 616 F.Supp.2d. 1267, 1280-81 (S.D. Fla. 2009) (finding that complaints such as telling supervisor that his behavior was inappropriate and asking him to

please not use "that language" with her was not sufficient to notify employer that plaintiff believed that supervisor was harassing her); *Cordero v. Florida,* No. 4:06cv529-SPM/AK, 2007 WL 2972988, *5 (N.D. Fla. Oct. 9,2007) (finding that plaintiff's general complaints were not sufficient to put his employer on notice that he believed his supervisor was discriminating against him due to his disability); *see also Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 262 (1st Cir.1999) (finding that plaintiff never alleged in his complaints that the conduct at issue violated Title VII or any other law and thus could not be considered protected activity).

## VI.     MONELL LIABILITY

Contrary to Plaintiff's assertions, the Clerk is entitled to the Monell defense because he is considered a supervisory official for purposes of *Monell* liability. The law is clear that like municipalities, supervisory officials cannot be held liable for the acts of employees solely on the basis of *respondeat superior. McLaughlin v. City of LaGrange,* 662 F.2d 1385, 1388 (11th Cir. 1981), *cert. denied,* 456 U.S. 979 (1982); *Rogers v. White,* 2009 WL 77267, 1 (M.D. Fla. 2009); *Hyland v. Kolhage,* 158 Fed.Appx. 194, 2005 WL 3159635 (11th Cir. 2005) (holding that Clerk of Court could not be liable under § 1983 under theory of respondeat superior).

In the instant case, Plaintiff cannot demonstrate any improper motive by the final decision-maker. Plaintiff alleges the Clerk discriminated against him during the June 11, 2007 meeting when Plaintiff was terminated for questioning the Clerk's instruction regarding the English-only rule and the alleged disparity in treatment between himself, Pruitt and McIntyre. As stated *supra*, there is no record evidence to support either Plaintiff's self-serving claim that he questioned the Clerk's instruction regarding the speaking of Spanish or Plaintiff's claim that the Clerk testified that Spanish could not be spoken regardless of the circumstances. Likewise, the record evidence clearly shows that Pruitt and McIntyre are not valid comparators because they

were not supervised by Kingsley, did not commit the same or substantially similar offenses as Plaintiff, did not accuse their supervisor of sabotaging their career and trying to get them fired and did not commit any of their offenses in the presence of the Clerk. Moreover, unlike Plaintiff, both Pruitt and McIntyre agreed to improve their behavior when they attended their counseling meeting with the Clerk. Plaintiff clearly did not do that. Thus, the record is replete with evidence that any alleged disparities in treatment between Plaintiff, Pruitt and McIntyre were based on non-discriminatory reasons.

Although Plaintiff alleges the Clerk did not conduct an independent review of Plaintiff's complaint, the uncontroverted evidence demonstrates otherwise. Specifically, the purpose of the June 11, 2007 meeting was for the Clerk to review Plaintiff's complaints against his supervisor. It was while doing so that Plaintiff elected to demonstrate the extent his relationship with his supervisor had been damaged by accusing her of sabotage and attempting to get him fired. Once that occurred, the Clerk determined the employment relationship between Plaintiff and Kingsley was irreparably harmed, hence his decision to terminate Plaintiff's employment. Since Plaintiff has failed to adduce any evidence that the final policymaker as to Plaintiff's employment, the Clerk, acted in a discriminatory manner in violation of §1983, Plaintiff has necessarily failed to establish a §1983 claim for race and/or national origin discrimination.

## VII. CONCLUSION

Based on the foregoing, Defendant, DAVID R. ELLSPERMANN, in his official capacity as Clerk of Court, respectfully requests the entry of Final Summary Judgment in his favor.

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on January 18, 2010, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: David B. Sacks, Esq. at david@sackslegal.com

      /s/ *Cindy A. Townsend*
MICHAEL J. ROPER, ESQ.
Florida Bar No. 0473227
mroper@bellroperlaw.com
CINDY A. TOWNSEND, ESQ.
Florida Bar No. 0788961
ctownsend@bellroperlaw.com
Bell, Roper & Kohlmyer, P.A.
2707 East Jefferson St.
Orlando, FL   32803
407-897-5150 - Telephone
407-897-3332 - Facsimile
Attorneys for Defendant